UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-523-RJC-DCK

| | |
|---|---|
| THOMAS LEE SOWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHARLOTTE, NORTH CAROLINA, | ) |
| WILLIAM PALLONE, individually and as an | )   **ORDER** |
| Officer of the Charlotte Mecklenburg Police | ) |
| Department, DUSTIN WIPPEL, individually | ) |
| and as an Officer of the Charlotte Mecklenburg | ) |
| Police Department, and EDWARD KAMINSKI, | ) |
| individually and as an Officer of the Charlotte | ) |
| Mecklenburg Police Department, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendants William Pallone ("Officer Pallone"), Dustin Wippel ("Officer Wippel"), Edward Kaminski ("Officer Kaminski"), and the City of Charlotte's (collectively, "Defendants") Joint Motion for Summary Judgment, Supporting Memoranda, and exhibits, (Doc. Nos. 21 to 21-6, 23); and Plaintiff Thomas Lee Sowers's ("Plaintiff") Memorandum in Opposition, (Doc. No. 22). The Motion has been fully briefed and the issues are ripe for adjudication.

I.     BACKGROUND

This civil action arises out of the arrest of Plaintiff by the defendant officers on September 24, 2011. The record establishes, the parties agree, and/or the parties do not dispute the following. On the afternoon of September 24, 2011, Plaintiff was having drinks at the Thomas Street Tavern (the "Tavern") in Charlotte, North Carolina. (Doc. No. 1: Complaint ¶13). Plaintiff had been at the Tavern since mid-afternoon, (Doc. No. 21-2: Plaintiff's

Deposition at 6), and he had consumed approximately six 12-ounce bottles of beer and two shots of liquor, (Doc. No. 21-1: Plaintiff's Responses to Interrogatories and Requests for Production at 7).  Around 8:30 p.m., Plaintiff's daughter, Rachel Sowers ("Rachel"), who was under the age of 21 at the time, arrived at the Tavern and began drinking with her boyfriend, Joseph Robles-Zambrano ("Robles-Zambrano").  (Doc. No. 1 ¶¶14–16).  A Tavern employee discovered that Rachel was consuming alcoholic beverages underage, and he requested that she and Robles-Zambrano leave the premises.  (Id. ¶16).  Rachel and Robles-Zambrano were escorted out of the Tavern by Tavern employees.  (Id. ¶18).  Rachel stated that she needed to get Plaintiff, but she was not allowed back inside.  (Id. ¶17).

Plaintiff was still inside the Tavern when he became aware that his daughter had been asked to leave.  The next thing Plaintiff remembers is getting up off of the ground outside in front of the Tavern.  (Doc. No. 21-2 at 10).  Plaintiff had been struck in the head, and he has no memory of who struck him.  (Id. at 6, 10).  Around the same time, police officers arrived at the scene, including the defendant officers.  (Doc. Nos. 1 ¶22, 21-1 at 3).  After getting up off the ground, Plaintiff and Rachel stood next to Plaintiff's car, which was parked in the Tavern parking lot, and waited for the police to gain control of the situation.  (Doc. No. 22-1 at 3).  Rachel was insisting on making a statement to the police regarding the assault on Plaintiff, and she exclaimed to the police several times that a Tavern employee had hit Plaintiff and she wanted that employee arrested.  (Id. at 3–4).

When Officers Wippel and Kaminski arrived at the scene, they were told by the Tavern manager, Josh Feury ("Feury"), that Plaintiff, Rachel, and Robles-Zambrano had been told to leave the premises and that Tavern employees had attempted to remove the three from the property.  (Doc. Nos. 22-10, 22-11).  Also while in the presence of Officers Wippel and

Kaminski, Feury banned Rachel and Robles-Zambrano from the property. (Id.). Eventually Plaintiff, Rachel, and Robles-Zambrano walked away from the scene and started to enter a cab in order to leave, but Rachel pulled away and returned to the scene again insisting on making a statement to the police and pressing charges. (Doc. No. 22-1 at 3–4). Plaintiff and Robles-Zambrano followed Rachel back toward the police officers. At that point, Officers Wippel and Kaminski arrested Rachel and Robles-Zambrano. (Id.). While standing about ten feet away from Officers Wippel and Kaminski and directly in front of Officer Pallone, Plaintiff asked the officers "Why are they getting arrested? What are their charges? I don't want them to say anything without an attorney." (Id. at 4, 7). The officers did not respond to Plaintiff's questions; however, they told Plaintiff to back off and warned him that he would be arrested if he did not stop asking questions. (Doc. Nos. 1 ¶¶25–26, 22-1 at 3–6, 22-13 at 6). Plaintiff did not comply with the officers' instructions, and eventually, Officer Pallone arrested Plaintiff. (Doc. Nos. 22-10, 22-16). Plaintiff was charged with Second Degree Trespass and Resisting, Delaying, or Obstructing a Public Officer. (Doc. No. 1 ¶28).

Plaintiff was transported to the Mecklenburg County Jail where he appeared before a neutral magistrate. Officers Wippel, Kaminski, and Pallone each provided narrative incident reports to the magistrate. (Doc. Nos. 22-2, 22-3, 22-10 to 22-12). Feury was also listed as a witness on the magistrate's complaint. (Doc. Nos. 22-2, 22-3). Based upon the sworn statements of the officers regarding the events surrounding Plaintiff's arrest, the magistrate determined that Plaintiff's arrest was supported by probable cause. (Doc. Nos. 1 ¶¶30–31, 22-2, 22-3).

Plaintiff filed his Complaint in this Court on September 22, 2014. (Doc. No. 1). His Complaint alleges claims for: (1) violations of his constitutional rights pursuant to 42 U.S.C. §

1983; (2) False ,Imprisonment; (3) Malicious Prosecution; (4) Intentional Infliction of Emotional Distress; (5) Negligent Infliction of Emotional Distress; (6) Civil Conspiracy; and (7) Punitive Damages.  (Id.).  All of Plaintiff's claims flow from his contention that the officers wrongfully arrested him without probable cause on September 24, 2011.

Each defendant filed an answer to the Complaint, (Doc. Nos. 3, 5, 6), and a Scheduling Order was entered on March 3, 2015, (Doc. No. 15).  After reaching an impasse at mediation, (Doc. No. 20), Defendants filed their Joint Motion for Summary Judgment, on November 11, 2015, (Doc. No. 21).  Plaintiff responded on November 24, 2015, (Doc. No. 22); and Defendants replied on December 4, 2015, (Doc. No. 23).

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law.  Id.  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  This "burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

## III. DISCUSSION

### A. Plaintiff's Claims

At bottom, Plaintiff's suit rests upon his contention that the officers wrongfully arrested him without probable cause. Each of Plaintiff's claims stems from this central contention, and each claim proceeds or fails on the resolution of that issue. If the undisputed evidence shows that the officers lacked probable cause to arrest Plaintiff, then some of his claims may proceed. On the other hand, if it is shown that the officers did indeed have probable cause, then all of Plaintiff's claims must be dismissed. The Court finds the latter.

The Federal Civil Rights Act, 42 U.S.C. § 1983, imposes civil liability upon every person

who, under color of law, deprives another of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. An arrest made in violation of a person's fourth amendment right to be free from unreasonable seizures, therefore, will give rise to a claim under 42 U.S.C. § 1983. See, e.g., Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974). Similarly, a civil cause of action may arise under state law for false imprisonment or malicious prosecution based upon an invalid warrantless arrest. See Myrick v. Cooley, 371 S.E.2d 492, 494 (N.C. Ct. App. 1988). The validity of a warrantless arrest under fourth amendment principles, as well as the validity of such an arrest under state-law standards, hinges upon the existence of probable cause. Surdyka, 492 F.2d 368; Myrick, 371 S.E.2d at 494; see also N.C. Gen. Stat. § 15A-401(b)(1) ("An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense . . . in the officer's presence."); Melton v. Dermota, 940 F.2d 652 (4th Cir. 1991) ("[T]here is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause."). Put simply, a warrantless arrest is valid if the officer had probable cause to believe the suspect had committed a criminal offense in the officer's presence. See Surdyka, 492 F.2d 368; Myrick, 371 S.E.2d at 494. Consequently, as Plaintiff notes, "the dispositive issue is whether Defendants had probable cause to believe that Plaintiff had trespassed or resisted a public officer." (Doc. No. 22 at 11). If the defendant officers had probable cause to believe that Plaintiff had committed any crime in their presence,[1] then no civil claim for liability will lie under federal or state law.[2]

---

[1] Officers can lawfully arrest a person so long as they have probable cause to arrest him for any offense. Devenpeck v. Alford, 543 U.S. 146, 153–55 (2004). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Id. at 153.

[2] Likewise, Plaintiff's claims for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Civil Conspiracy, and Punitive Damages are based upon the alleged

The test for probable cause, and thus the standard for measuring the lawfulness of an arrest, is the same for both Section 1983 and state law claims. See Myrick, 371 S.E.2d at 495. "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175–76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). As Plaintiff notes, "the degree of certainty that corresponds to probable cause is <u>fair probability</u>." (Doc. No. 22 at 16). Furthermore, police officers may defend against civil suits for damages for unconstitutional arrests by showing their good faith and reasonable belief in the validity of the arrest. Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973). In order to prevail on any of his claims, therefore, Plaintiff must establish an absence of probable cause for the arrest. Myrick, 371 S.E.2d at 495.

Plaintiff's sole basis for his contention that the officers lacked probable cause for his arrest is his deposition testimony that he was never asked to leave the property and that he never attempted to impede any officer from making an arrest. (Doc. No. 22-1 at 6–7). Plaintiff asserts that his testimony regarding these two contentions conflicts with the statements and testimony of the officers. Therefore, he contends there is a factual dispute, and summary judgment is not appropriate. However, the substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Plaintiff's "innocence of the offense charged does not establish an absence of probable cause for the arrest."

---

illegal arrest by the officers; therefore, a finding of probable cause would also negate those derivative claims.

Myrick, 371 S.E.2d at 495.  The Court finds that whether Plaintiff was ever actually asked to leave the property or whether Plaintiff actually committed the offenses for which he was arrested are immaterial to the issue of probable cause, and therefore, any alleged dispute regarding those facts does not preclude summary judgment.

The material issue here is whether the facts and circumstances within the officers' knowledge, of which they could reasonably rely upon, were sufficient to warrant a reasonable officer to believe that Plaintiff had committed a crime.  There is sworn, uncontradicted evidence that the officers were told by the Tavern manager that Plaintiff had been instructed to leave the property and that Tavern employees had attempted to remove Plaintiff from the property.  (Doc. Nos. 22-10, 22-11).  The officers on the scene had reasonably reliable information that Plaintiff had been instructed to leave; therefore, the facts and circumstances then known to the officers would reasonably lead them to believe that Plaintiff should not remain on the premises.  In fact, Plaintiff testified that he did leave only to return when he followed his daughter back to the scene.  Under the circumstances surrounding the events at the Tavern on September 24, 2011, a reasonable officer would believe that Plaintiff was committing the crime of trespassing.  The Court finds that the defendant officers had a reasonable and good faith belief that Plaintiff had committed an offense in their presence, and therefore, the officers had probable cause to arrest Plaintiff for trespassing.  A finding of probable cause to arrest Plaintiff for any offense ends the inquiry.  See Devenpeck, 543 U.S. at 153–55.  Having so found, the Court need not reach the issue of resisting, delaying, or obstructing an officer.[3]

---

[3] Although not reaching the issue, the Court notes that the evidence suggests the officers also had probable cause to arrest Plaintiff for delaying or impeding a public officer.  Although Plaintiff did not use physical violence or force, he failed to heed the officers' instructions to back off and their warnings that he would be arrested if he did not comply.  This indicates the officers had

After conducting a thorough review of the evidence in the light most favorable to Plaintiff, the Court finds that there are no genuine issues of material fact in this case. Defendants have demonstrated the existence of probable cause for Plaintiff's arrest, and Plaintiff has failed to set forth facts establishing anything to the contrary. The uncontroverted evidence shows, and the Court finds, that the defendant officers had probable cause to arrest Plaintiff.[4] The Court need not proceed further, as the existence of probable cause is detrimental to all Plaintiff's claims. Because the officers had probable cause, Plaintiff's arrest was valid, and there was no violation of his constitutional rights. There is accordingly no basis for a finding of any liability on the part of the defendant officers under federal or state law. The absence of any liability on the part of the City of Charlotte necessarily follows from the Court's conclusion that there was no violation of Plaintiff's constitutional rights by the individual officers. Consequently, the Court will **grant** Defendants' Motion for Summary Judgment as to its request that Plaintiff's Complaint be dismissed.

B. Costs and Fees

Under the principle known as the 'American Rule,' parties pay their "own attorney's fees, win or lose, unless a statute or contract provides otherwise." Marx v. General Revenue Corp., 133 S. Ct. 1166, 1175 (2013) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253–54 (2010)). Here, 42 U.S.C. § 1988 provides, in pertinent part, that in any action under section 1983, "the court, in its discretion, may allow the prevailing party, other than the United

---

probable cause to arrest Plaintiff for delaying or impeding the officers. See State v. Leigh, 179 S.E.2d 708, 711 (N.C. 1971); State v. Cornell, 729 S.E.2d 703, 705–07 (N.C. Ct. App. 2012).
[4] Alternatively, the Court finding that the officers acted in good faith under a reasonable belief as to the validity of the arrest establishes the defense of "qualified immunity." It protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

States, a reasonable attorney's fee as part of the costs." "While plaintiffs prevailing under 42 U.S.C. § 1988 are entitled to attorneys' fees unless special circumstances would render an award unjust, prevailing defendants are entitled to attorney fees <u>only</u> when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." <u>United States v. State of Miss.</u>, 921 F.2d 604, 609 (5th Cir. 1991) (citations omitted). Regardless of whether a claim was ultimately successful, a claim is not frivolous unless it was so lacking in merit that it was groundless. <u>Id.</u> Likewise, North Carolina statutes allow the award of costs and fees to the prevailing party under similar circumstances. <u>See</u> N.C. Gen. Stat. §§ 6-20, 6-21.5.

The Court finds that Plaintiff's claims were not frivolous, unreasonable, or groundless and, therefore, declines to exercise its discretion to award costs or fees under federal or state law. Consequently, the Court will **deny** Defendants request for costs and fees.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Joint Motion for Summary Judgment, (Doc. No. 21), is **GRANTED in part and DENIED in part**;
2. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED with prejudice**;
3. Defendant's request that the costs of defending this action, including reasonable attorneys' fees, be awarded to Defendants is **DENIED**; and
4. The Clerk of Court is hereby directed to close this case.

Signed: December 9, 2015

Robert J. Conrad, Jr.
United States District Judge